IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

JOE B. BUTLER, JR.                                                          PETITIONER
REG. #14225-076

V.                                        NO.  2:08cv00157 SWW-JWC

T.C. OUTLAW, Warden,                                                 RESPONDENT
FCI, Forrest City, AR

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and two copies of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.       Why the record made before the Magistrate Judge is inadequate.

2.       Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before
the District Judge in the form of an offer of proof, and a copy, or the original,
of any documentary or other non-testimonial evidence desired to be
introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## RECOMMENDED DISPOSITION

Joe B. Butler, Jr., an inmate at the Federal Correctional Institution in Forrest City,

Arkansas (FCI-Forrest City), brings this 28 U.S.C. § 2241 petition for writ of habeas corpus

and supporting brief (docs. 1, 2).   Respondent has filed a response (doc. 5), to which

Petitioner replied (doc. 6).   For the reasons that follow, the petition should be **denied**.

I.

The following facts are undisputed.   On May 31, 1989, Petitioner received a fifteen-

year sentence from state charges arising in Shelby County, Tennessee.   He was later

released on parole, but his parole was revoked on April 15, 1993, returning him to state

custody.   (*See* Pet'r Ex. C & E [doc. 2, at 26-27, 29].)

On May 26, 1993, he was transferred to the custody of federal authorities for

prosecution and sentencing on a federal charge in the United States District Court for the

Western District of Tennessee.   (*See* Pet'r Ex. E [doc. 2, at 29].)  Following entry of a guilty

2

plea, he was convicted of being a felon in possession of a firearm and was sentenced, by

judgment entered on December 22, 1993, to 120 months of imprisonment in the custody

of the United States Bureau of Prisons (BOP) (doc. 5-4).  The judgment states that the

federal imprisonment term is "to run consecutively to the undischarged prison term [he is]

now serving."  At that time, Petitioner's only "undischarged term" was the fifteen-year state

sentence arising from Shelby County, Tennessee.  The judgment is silent as to whether

the federal sentence was to run concurrent with or consecutive to any sentence a state

court might impose in the future or on any outstanding state charges.

Following his federal sentencing, Petitioner was returned to state custody.  He was

subsequently tried on multiple state charges arising out of Tipton County, Tennessee.  On

February 22, 1994, he pleaded guilty to those charges and was sentenced to an aggregate

imprisonment term of thirty years.  (Pet'r Ex. B [doc. 2, at 14-25].)[1]  Because the offenses

were committed while Petitioner was on parole on the Shelby County sentence, state law

required that the new Tipton County sentence be served consecutively to the fifteen-year

Shelby County sentence.  *See* Tenn. R. Crim. P. 32(c)(3) (*see also* Pet'r Ex. E [doc. 2, at

29]).  The judgments state that the Tipton County sentences are to run "concurrent with all

federal time."

The Tennessee Board of Paroles later exercised its discretionary authority to allow

Petitioner to begin serving the Tipton County sentence before expiration of the Shelby

_____

[1]The convictions arose from two cases, No. 2490 and No. 2538, and were for two counts
of aggravated burglary (ten years each), five counts of theft (eight years on four counts; four years
on one), one count of aggravated assault (ten years), one count of especially aggravated
kidnapping (thirty years), one count of aggravated robbery (fifteen years), and two counts of
contraband in a penal institution (ten years each).  All sentences were to run concurrent with each
other.

County sentence, determining that service of his thirty-year Tipton County sentence would begin on February 22, 1996. (Pet'r Ex. D [doc. 2, at 28].)  At this time, Petitioner began serving both the Tipton County and Shelby County sentences in state custody.  (Pet'r Ex. E [doc. 2, at 29].)  The records indicate that the Shelby County sentence expired sometime in 2000,[2] and Petitioner remained in state custody, serving the remainder of the Tipton County sentence.

On August 13, 2007, Petitioner was released from Tennessee state officials to the custody of the United States Marshal.  The BOP computed his 120-month federal sentence as commencing from this date, with a projected release date of April 29, 2016, according to sentence monitoring computation data sheets from November 2007 and August 2008 (doc. 2, at 32-34; doc. 5-3, at 2-3).

On August 14, 2008, Petitioner initiated this 28 U.S.C. § 2241 petition, asserting that the BOP is improperly calculating his federal sentence.  He contends that, because the federal court ordered his federal sentence to be consecutive to the Shelby County state sentence, the federal sentence commenced on February 22, 1996, when he was "paroled from" the Shelby County sentence and began serving the Tipton County sentence in state custody.  He contends that the Tipton County sentence was running concurrently with his federal sentence, as had been directed by the Tipton County judgments.  Alternatively, he says he began serving his federal sentence on January 4, 2000, when the Shelby County sentence expired while he was still in state custody.  He says his sentences "should have been served in the judicial order they were pronounced," *i.e.*, first the fifteen-year Shelby

---

[2]This date was either January 4 or August 7, 2000 (*see* doc. 2, at 26, 29, 49).

County sentence in state custody, then transferred to federal custody to serve the ten-year federal sentence concurrently with the thirty-year Tipton County sentence, then any remaining time back in state custody on the Tipton County sentence.

As relief, Petitioner asks this Court: (1) to declare that he was eligible to be paroled from the Shelby County sentence to the federal sentence on February 22, 1996; (2) to declare that the Tennessee State Parole Board violated state law by causing the Tipton County sentence to run concurrently with the Shelby County sentence; (3) to declare that the State of Tennessee should have released him to federal custody no later than January 4, 2000, to begin serving his federal sentence; and (4) to order that all time from January 4, 2000, be credited toward his federal sentence, which would result in his being released immediately from imprisonment.

In response to Petitioner's § 2241 petition, the BOP's Designation and Sentence Computation Center (DSCC) contacted the federal court which sentenced Petitioner, asking its position on a "retroactive" or "*nunc pro tunc* concurrent designation" of the State of Tennessee as the place for service of his federal sentence concurrently with the Tipton County state sentence, thus commencing the federal sentence on February 22, 1996 (doc. 5-6).   In response, the federal sentencing judge stated that he "cannot endorse a concurrent sentence in this matter."  He stated that the federal judgment was "silent" as to whether the federal sentence would be served concurrently to a yet-to-be imposed state sentence, which "means a consecutive sentence" and he saw "no reason to offer unusual relief in this case" (doc. 5-6, at 4).  The BOP then evaluated Petitioner's request utilizing

the factors enumerated in 18 U.S.C. § 3621(b)[3] and determined, on September 3, 2008, that "retroactive designation would not be appropriate" based on the nature and circumstances of his current offenses, his criminal history,[4] and the federal sentencing court's statement (doc. 5-7).

## II.

Respondent argues that the § 2241 petition should be dismissed because Petitioner has failed to exhaust his administrative remedies within the BOP regarding the calculation of his federal sentence.

By statute, a federal sentence "commences on the date the defendant is received in custody [at] the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a).  The Attorney General, through the BOP, is responsible for designating the "official detention facility" where a federal prisoner will serve his sentence, and for computing how much credit should be awarded for any time spent in custody prior to commencement of the sentence.  *United States v. Wilson*, 503 U.S. 329, 331, 334-35 (1992); *Fegans v. United States*, 506 F.3d 1101, 1103 (8th Cir. 2007); *United States v.*

---

[3]This statute lists the following factors the BOP must consider in exercising its discretion to designate the place where a prisoner will serve a federal prison sentence: (1) the resources of the facility contemplated; (2) the nature and circumstances of the federal offense; (3) the prisoner's history and characteristics; (4) any statement by the court that imposed the federal sentence concerning the purposes for which the sentence was determined to be warranted, or recommending a type of penal or correctional facility; and (5) any pertinent policy statement issued by the United States Sentencing Commission.

[4]In addition to the multiple convictions connected with this case, he also has prior convictions from 1982 to 1988 for escape, DUI, stolen property, burglary, resisting arrest and larceny (*see* doc. 5-7, at 2).

*Tindall*, 455 F.3d 885, 888 (8th Cir. 2006), *cert. denied*, 549 U.S. 1152 (2007); *see* 18 U.S.C. §§ 3621(a) & (b), 3585.

If an inmate disagrees with any aspect of the BOP's computation of his federal term of imprisonment, the proper avenue for relief is administratively through the BOP, *followed by* judicial review under 28 U.S.C. § 2241.  *Tindall*, 455 F.3d at 888.  The law is well-settled that federal prisoners must exhaust their available administrative remedies before seeking federal habeas relief.  *Wilson*, 503 U.S. at 335; *United States v. Pardue*, 363 F.3d 695, 699 (8th Cir. 2004); *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000); *Kendrick v. Carlson*, 995 F.2d 1440, 1447 (8th Cir. 1993); *Willis v. Ciccone*, 506 F.2d 1011, 1014-15 (8th Cir. 1974).

The BOP administrative remedy program is a three-tier process by which federal prisoners may seek "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10.  An inmate must initially attempt to resolve the issue informally with institutional staff.  *Id.* § 542.13(a).  If this fails or is waived, an inmate must submit a BP-9 request to the appropriate institutional staff member within twenty days of the date on which the basis for the request occurred.  *Id.* § 542.14.  If the inmate is not satisfied with the staff response, he may appeal (BP-10) to the appropriate Regional Director within twenty days, and, if not satisfied with that response, the inmate may appeal (BP-11) the decision to the Office of General Counsel within thirty days.  *Id.* § 542.15.  An appeal to the General Counsel is the final step in administrative exhaustion.  *Id.*

Respondent submits documentation showing that Petitioner has never utilized the BOP's formal administrative process to challenge the computation of his sentence, the determination of his commencement date, the designation of his place of imprisonment,

or the computation of any credits for time spent in state custody (doc. 5-2 ¶ 11; doc. 5-8). Additionally, nothing indicates that Petitioner appealed or sought any further administrative review of the DSCC's September 3, 2008, determination that he was not entitled to a retroactive designation of the Tennessee state prison as the place for serving his federal sentence.

Petitioner contends that exhaustion would be futile because he has done all he could to try to correct the problem at both the state and federal level and just "because a letter is not titled BP-9, BP-10 or BP-11 ... does not mean it is not an administrative remedy." He also says his non-exhaustion should be excused because "every day he now serves ... is yet another miscarriage of justice" (doc. 6, at 6-7). He refers to several exhibits[5] which he says document his efforts:

> (1)     an August 13, 1998, letter from the inmate systems administrator for the BOP's Mid-Atlantic Regional Office, stating that Petitioner's federal sentence "could not begin before August 7, 2000, the expiration of your [state] parole violation term, and then only with the permission of the sentencing federal court" (Pet'r Ex. L [doc. 2, at 49]);

> (2)     a March 1, 2000, letter from the BOP regional administrator, stating that no decision could be made until further information was obtained (Pet'r Ex. A3 [doc. 6, at 13]);

> (3)     an April 25, 2000, letter from a BOP inmate systems specialist, stating that documentation had been requested regarding his request that his federal sentence run concurrent with his state sentence, and stating that he would be notified when a determination was made (Pet'r Ex. A2 [doc. 6, at 12]);

> (4)     letters dated July 14 and July 17, 2000, from a state public defender that Petitioner contacted for assistance (Pet'r Ex. A4, A5 [doc. 6, at 14-15]);

---

[5]The Court also reviewed his other exhibits reflecting his efforts in state court and with state prison officials. (*See* Pet'r Ex. E, G, H, I, J, K, M, O, P [doc. 2, at 29-30, 35-48, 50-53, 55-61].)

(5)     an October 25, 2001, letter from a staff attorney with the federal sentencing court, advising Petitioner that he needed to exhaust his state remedies if he was challenging his state sentence, and further advising him that a state court could not force a federal court to impose a concurrent sentence or force the BOP to accept a prisoner or award sentence credits (Pet'r Ex. N [doc. 2, at 54]); and

(6)     a November 1, 2007, memorandum from the BOP's DSCC stating that no credits would be applied to his federal sentence (Pet'r Ex. F [doc. 2, at 31]).

While these efforts do demonstrate some diligence on Petitioner's part, all but the last pre-date his entry into the BOP and do not excuse his failure to use the administrative system once in federal custody.  Correspondence with non-BOP entities and individuals is irrelevant to the exhaustion inquiry.  Several of the responses were inconclusive and contingent upon receipt of further information, including a statement from the federal sentencing court.  All the exhibits pre-date the BOP's September 3, 2008, decision that no retroactive designation was appropriate, which was the only BOP decision made *after* receipt of the federal sentencing court's statement.  As stated, there is no indication that Petitioner sought further administrative review of this decision.  Without a fully developed administrative record, the Court is unable to ascertain whether the BOP abused its substantial discretion in refusing to retroactively designate the Tennessee state prison as the place for concurrent service of his federal sentence.  *See Fegans*, 506 F.3d at 1103-05 (BOP denial of *nunc pro tunc* designation of state institution for service of federal sentence must be upheld where BOP carefully considered § 3621(b) factors and acted in accordance with BOP program statement; federal court must afford "substantial deference" to BOP finding that federal sentencing court did not intend for federal sentence to run concurrent with any later-imposed state sentence; state court's declaration that sentences should be concurrent is not binding); *Taylor v. Sawyer*, 284 F.3d 1143, 1149 (9th Cir. 2002)

("such a designation by the BOP is plainly and unmistakably within the BOP's discretion and we cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy"); BOP Program Statement 5160.05 (providing instructions for designation of a state institution for concurrent service of a federal sentence) (doc. 5-5).

Petitioner has not demonstrated proper utilization of the BOP's administrative procedures, and his belief that such pursuits would be unsuccessful does not render the remedy futile.  Before the federal court intervenes, he should be required to provide the BOP an opportunity to fully assess his claims regarding the computation of his sentence and designation of his place of imprisonment, areas committed to the discretion of the BOP.  Under these circumstances, this § 2241 petition should be denied without prejudice to refiling after complete and proper exhaustion of the BOP's administrative remedies.


III.

Accordingly, this 28 U.S.C. § 2241 petition for writ of habeas corpus (doc. 1) should be **denied** without prejudice.  Petitioner's motion for default judgment (doc. 7) simply seeks a judgment in his favor, and thus should be **denied**.  His motion for writ of mandamus (doc. 8)[6] does not seek relief from this Court and, instead, appears to be a copy of a motion he filed asking the Eighth Circuit Court of Appeals to compel this Court to hold an evidentiary hearing and issue a ruling or, alternatively, for the Court of Appeals to rule in his favor and

---

[6]The motion includes a 137-page appendix which is a copy of all filings in this case.

order his release.  To the extent the motion seeks any relief from this Court, it should be

**denied**.

DATED this 11th day of February, 2009.


_____
UNITED STATES MAGISTRATE JUDGE